,

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CATHERINE GRAVITT and TRAVIS GRAVITT,<br><br>              Plaintiffs,<br><br>   v.<br><br>MENTOR WORLDWIDE LLC,<br><br>              Defendant. | CASE NO: 1:17-CV-05428 |

**MENTOR WORLDWIDE LLC'S MOTION TO STRIKE PLAINTIFFS'
"REBUTTAL" EXPERT DISCLOSURES AND MEMORANDUM IN SUPPORT**

Defendant Mentor Worldwide LLC ("Mentor") moves pursuant to Rule 37(c) and L.R. 37.2 to strike Plaintiffs' three "rebuttal" experts' reports as they are either not proper rebuttal, are duplicative and cumulative of Plaintiffs' already-disclosed experts, are unqualified to provide the opinions proffered, or are untimely.

**I.    BACKGROUND**

According to the Court's scheduling order, Plaintiffs' expert disclosures were due February 10, 2022. *See* Doc. 306. Plaintiffs produced expert reports from Arthur Brawer, M.D., Henry Dijkman, Ph.D., and Pierre Blais, Ph.D. *See* Reports attached, as Exhibits A, B & C. Mentor's expert disclosures were due April 30, 2022, and Mentor served expert reports from seven experts in the fields of plastic surgery, toxicology, biomaterials, biostatistics, rheumatology, regulatory affairs and compliance, and postmarket surveillance. *See* Doc. 313. Plaintiffs' rebuttal expert disclosures—if any—were due May 31, 2022, or 30 days after Mentor served its expert disclosures on April 30, 2022. *See id.* Plaintiffs requested a six-week extension of time to July 15, 2022 to

1

secure one[1] rebuttal expert's report, to which Mentor agreed. *See* Doc. 316 at ¶ 13 and n.1; Doc. 317. On July 12, 2022, Plaintiffs' counsel asked if Plaintiffs could have until Monday, July 18, 2022 at 9:00 a.m. to submit their rebuttal expert disclosure. Mentor's counsel assented. *See* E-mail between B. Uberoi and D. Rawlin (July 12, 2022), attached as Exhibit D.

The informally-extended deadline came and went with Plaintiffs not producing their rebuttal expert disclosure. At 9:53 a.m., Plaintiffs' counsel e-mailed asking for an additional two weeks to serve their rebuttal expert disclosure. *See* e-mail from B. Uberoi to D. Rawlin (July 18, 2022), attached as Exhibit E. Mentor's counsel agreed to provide Plaintiffs until the close of business on July 18, 2022. *See* e-mail from D. Rawlin to B. Uberoi (July 18, 2022), attached as Exhibit F. Later that day, Plaintiffs served "rebuttal" expert disclosures identifying Jan Willem Cohen Tervaert, M.D., Ph.D., Pierre Blais, Ph.D and Lawrence Mayer, M.D. Ph.D. as "rebuttal" experts and enclosing expert reports from Dr. Tervaert and Dr. Blais. *See* Rebuttal Disclosure and Reports, attached as Exhibit G, H & I. Plaintiffs produced no report for Dr. Mayer.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(D) requires each party to disclose its expert reports "at the times and in the sequence that the court orders." "Failing to disclose an expert witness's report by a court-ordered deadline results in an automatic and mandatory exclusion of the witness, unless the non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). This Court has discretion over discovery determinations, including whether to exclude improper expert reports. *Karum Holdings LLC v. Lowe's Cos., Inc.*, 895 F.3d 944. 950 (7th Cir. 2018).

---

[1] Plaintiffs represented to Mentor and to the Court that Plaintiffs "need an extension for a proposed rebuttal expert to complete a report." *See* Doc. 316 at ¶ 13. Plaintiffs requested an extension for one rebuttal expert, but ended up with three.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dept.*, 535 F.3d 521, 630 (7th Cir. 2008) (quoting *United States v. Grintjes*, 237 F.3d 867, 879 (7th Cir. 2001)). Where the court's order permits rebuttal experts, a party may submit an expert rebuttal witness who is "limited to contradicting or rebutting evidence on the same subject matter identified by another party in its expert disclosures." *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010) (citing Fed. R. Civ. P. 26(a)(2)(c)). A party may not offer expert opinions under the guise of "rebuttal" only to provide additional support for her case in chief. *Peals*, 535 F.3d at 630. *See also Cage v. City of Chicago*, No. 09 C 3078, 2012 WL 5557410, at *2 (N.D. Ill. Nov. 14, 2012); *Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *6–7 (N.D. Ill. Jan. 3, 2011); *Larson v. Wis. Cent. Ltd.*, No. 10-C-446, 2012 WL 368379, at *4 (E.D. Wis. Feb. 3, 2012). Rebuttal opinions must add something new to the discovery process and not merely bolster previous opinions; evidence that is only offered as additional support of a party's argument and that does not contradict any evidence introduced by the opposing party is not proper rebuttal. *Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 5085338, at *1, 3 (N.D. Ill. Oct. 10, 2019). Rebuttal should be the result of a winnowing process, not an expansion of a party's original expert report, with a narrower focus than the initial expert opinion. *Id.* at 2. "Experts must limit their reply reports to the scope of the issues raised in the [defendant's] reports. The reply report is not the appropriate vehicle for presenting new opinions." *Ernst v. City of Chicago*, No. 08 C 4370, 2013 WL 4804837, at *1 (N.D. Ill. Sept. 9, 2013).

A "plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996). *See also*

3

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 CV 07713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). For example, a rebuttal report on causation is not proper since it goes directly to a main element of a plaintiff's prima facie case. *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F.Supp.3d 1287, 1291 (M.D. Fla. 2016) (striking rebuttal report which went to causation); *Africano*, 2019 WL 5085338, at *4 (striking rebuttal expert whose testimony was cumulative of another expert and went to causation, i.e., the safety of a polypropylene mesh medical device); *Sports Area Mgmt., Inc. v. K & K Ins. Grp., Inc.*, No. 06 C 6290, 2008 WL 4877452, at *1-2 (N.D. Ill. June 26, 2008) (striking rebuttal expert that went to causation). As a result, a plaintiff may not seize upon language used in a defendant's expert report to "as a chance to re-do their opening expert report." *Timber Pines*, 192 F.Supp.3d at 1291. The rebuttal report must address issues raised by the opposition's expert instead of simply bolstering support for issues for which the party already bears the burden of proof. *Africano*, 2019 WL 5085338 at *2; *see also Stanfield v. Dart*, No. 10 CV 6569, 2013 WL 589222, at *3–4 (N.D. Ill. Feb. 14, 2013).

The Seventh Circuit has held that "in most cases, a district court would be fully within its discretion in strictly applying the rules and excluding reports that were incomplete or submitted a day late." *Sherrod v. Lingle*, 233 F.3d 605 (7th Cir. 2000). In the case of expert reports that are untimely, the testimony must be excluded unless the delay was justified or harmless. Fed. R. Civ. P. 37(c)(1). The following factors guide the Court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Noffsinger*, 2011 WL 9795, at *3 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

### III. ARGUMENT

The Court should strike the "rebuttal" expert reports of Drs. Tervaert, Blais and Mayer. None of them are rebuttal. Each of these experts' opinions should have been disclosed on February 10, 2022, with Plaintiffs' initial affirmative expert disclosures. Dr. Tervaert's report is broad and expansive on the issue of causation, is duplicative and cumulative of Plaintiffs' already disclosed experts, Dr. Henry Dijkman and Dr. Arthur Brawer, and serves only to bolster Plaintiffs' initial expert reports. In addition, Dr. Blais is not qualified to provide the regulatory opinions in his rebuttal report relating to Mentor's expert Kim Trautman and the U.S. Food and Drug Administration regulatory regime relating to medical devices. Finally, Dr. Mayer's report should be stricken on the additional ground that it is untimely even if it were proper rebuttal (which it is not).

### A. Plaintiffs' sole remaining claim

It is important for context to remind ourselves that Plaintiffs have one claim that they are supposed to be pursuing: Did Mentor intentionally conceal the "true" rate of rupture or gel bleed of MemoryGel breast implants? *See* Mem. Opinion & Order, Doc. 71 at 24–25; Order, Doc. 300 at 1. Notably, to date, Plaintiffs have avoided addressing this claim. Indeed, none of their current expert witnesses have any opinions about Mentor's reporting of ruptures.

### B. Dr. Jan Willem Cohen Tervaert

Dr. Tervaert is a rheumatologist in Edmonton, Alberta, Canada. He is among a small group of researchers (mainly in Israel and the Netherlands) who advocate a hypothesis that silicone breast implants, like vaccines and other products, cause a non-specific illness called Autoimmune Inflammatory Syndrome Induced by Adjuvants, or ASIA syndrome. ASIA syndrome was first introduced as a theory in 2011 and is not formally recognized by the medical community, *i.e.*, it is

not an *International Classification of Diseases*, *Tenth Edition*, diagnosis, and there is significant debate about its existence and whether it is a real condition. In fact, one of Plaintiffs' other purported experts, Dr. Arthur Brawer, who is also a rheumatologist, is vocal that proponents of ASIA syndrome, such as Dr. Dijkman and Dr. Tervaert, are wrong on the science. As Dr. Brawer says, "ASIA is fantasia."

Dr. Tervaert's report is 23 pages—three times as long as Dr. Dijkman's case in chief expert report. *See* Tervaert Report, Exhibit H. Dr. Brawer's expert reports were only five and 16 pages. Dr. Tervaert lists 89 cited references—triple that of Dr. Dijkman. His reliance list indicates he reviewed the expert reports of Plaintiffs' three case in chief affirmative experts, Drs. Dijkman, Brawer and Blais, which would not be necessary if his report were truly in rebuttal to Mentor's experts. He also reviewed a number of Plaintiffs' medical records and Mentor's documents and even conducted a telephone interview of Plaintiff on July 15, 2022, to discuss her medical course and symptoms and to diagnose her with breast implant illness/ASIA. Dr. Tervaert's opinions make it very clear he is not a rebuttal expert. At worst, he is a case in chief expert whose report should have been disclosed on February 10, 2022—more than five months ago. At best, Dr. Tervaert's report is cumulative and constitutes improper bolstering of Plaintiffs' already disclosed experts, Dr. Brawer and Dr. Dijkman. Plaintiffs are clearly engaging in gamesmanship which is prejudicial to Mentor.

Dr. Tervaert's conclusions are case in chief expert opinions going to the crux of causation and are not "limited to contradicting or rebutting evidence on the same subject matter identified by [Mentor] in its expert disclosures." Each of Dr. Tervaert's opinions relates to causation and none are rebuttal:

- There is a **causal association** between Mentor SBIs and systemic reactions such as those observed in Breast Implant Illness (BII)/autoimmune/inflammatory syndrome induced by adjuvants (ASIA)

- Breast implants **cause** characteristic systemic reactions in certain women, leading to symptoms of sufficient severity to warranty device removal.

- The **causal association** between Mentor SBIs and BII/ASIA has been convincingly proven in the scientific community since 2013-2015, although studies exist that make the association earlier than that.

- **Causality** between trigger (the breast implant) and disease (BII/ASIA) have to be determined by the so-called Bradford Hill criteria. Applying these criteria demonstrates convincingly that **BII/ASIA is caused by silicone breast implants**.

- **Catherine Gravitt's symptoms are consistent with BII/ASIA** as identified in the existing medical literature.

*See* Tervaert Report, Exhibit H at 22–23. Indeed, Dr. Tervaert's expert report starts out, "I have been asked to provide expert opinion regarding Catherine Gravitt's symptoms in relation to her Mentor breast implants. . ." That is not rebuttal. That is an affirmative expert opinion that needed to be disclosed on February 10, 2022.

It is well-settled that expert reports on causation need to be produced initially and not in rebuttal because they go to a prima facie element of a plaintiff's case on which the plaintiff has the burden of proof. *See*, *e.g.*, *Braun*, 84 F.3d at 237; *Baldwin Graphic,* 2005 WL 1300763, at *2; *Timber Pines*, 192 F.Supp.3d at 1291; *Africano*, 2019 WL 5085338, at *4; *Sports Area Mgmt*, 2008 WL 4877452, at *1–2. In a strikingly similar case, *Africano v. Atrium Medical Corporation*, involving personal injury claims related to an implanted polypropylene mesh product, the plaintiff produced a "rebuttal" report that the polypropylene device would degrade in the body after implantation, causing inflammation or infection of the surrounding tissue (a theory similar to what Drs. Brawer, Dijkman and Dr. Tervaert advance in this case). The court struck the "rebuttal" report finding that, like Dr. Tervaert, the rebuttal expert's summary of opinions did not convey

7

any new information not already covered by prior experts: "Dr. Guelcher's report is not proper rebuttal, as it only supplements the arguments already made in Dr. Priddy's initial expert report." *Africano*, 2019 WL 5085338, at *3. In addition, because Dr. Guelcher's opinions all went to causation, he should have been disclosed in the plaintiff's initial expert reports, not in a rebuttal report: "The question of polypropylene's safety for human implantation directly relates to causation, a core element of Africano's case that Dr. Priddy has already addressed. Dr. Guelcher's report focuses broadly on the matter of polypropylene's safety and, therefore, could and indeed should have been presented as an initial expert report." *Id.* at *4.

So too here. Dr. Tervaert's theories on whether silicone gel breast implants cause breast implant illness or ASIA go directly to causation, a core element of Plaintiff's case. It is impossible to read Dr. Tervaert's report as anything but an eleventh hour attempt to inject a new expert into the case after Mentor has already disclosed its experts. Plaintiffs' attempt to do so is even more egregious given that Plaintiffs have already produced two experts on causation, Dr. Brawer and Dr. Dijkman. Dr. Tervaert's report is duplicative and cumulative of their reports (although simultaneously broader and more expansive).

Plaintiffs' failure to initially disclose Dr. Tervaert's opinions in February is neither justified nor harmless. Based on Plaintiffs' initial expert disclosures, Mentor strategically assembled its own slate of experts to address Drs. Brawer, Blais and Dijkman. If Plaintiffs had properly disclosed Dr. Tervaert in February, Mentor would have had the option of retaining an expert to specifically address issues in Dr. Tervaert's published literature on ASIA and deficiencies in his theories and methodologies, such as Dr. David Hawkes or Dr. Jonathan Spoor who have written

8

literature critical of Dr. Tervaert's research.[2] But Mentor was prejudicially denied the opportunity to retain any expert to rebut Dr. Tervaert due to Plaintiffs' sandbagging.

Dr. Tervaert is not a rebuttal expert and his report should be stricken.

### C. Dr. Pierre Blais[3]

It is unclear in what way Dr. Blais could be qualified to rebut the opinions of Kim Trautman. Ms. Trauman is—by Dr. Blais' own admission—a expert on medical device regulation. She worked at the FDA for 24 years. *See* Blais Report, Exhibit I, at 4. She wrote and harmonized the current FDA Quality System Regulation. She developed the International Medical Device Single Audit Program from conception through its pilot. She is on the Board of Directors of the Regulatory Affairs Professional Society.

On the other hand, Dr. Blais last worked in the Department of Health and Welfare, Canada, Bureau of Radiation and Medical Devices in 1989—over 30 years ago—when he was discharged for misconduct. Dr. Blais is a chemist. He has never worked at the FDA. He has never been a regulatory affairs expert. He does not have regulatory compliance experience in the medical device industry. He has never submitted a regulatory submission to the FDA for a medical device. He has spent the last 30 years looking at explanted breast implants in an annex to his garage and issuing reports of questionable accuracy or merit. Dr. Blais is patently unqualified to render opinions on the FDA's regulatory authority, pre-market approval, and post-market surveillance is unknown. He is not qualified to provide these opinions.

---

[2] *See* Spoor, J., et al., *Bradford Hill and breast implant illness; no evidence for causal association with breast implants*, Exp. Rev. Clin. Immunol. (June 2022); Hawkes, D., et al., *Perspective: Scientific and ethical concerns pertaining to animal models of autoimmune/autoinflammatory syndrome induced by adjuvants (ASIA)*, Autoimmunity Review 17 (2018) 435–439.

[3] During the Rule 37.2 meet and confer, Plaintiffs withdrew the portion of Dr. Blais's "rebuttal" report which pertains to David F. Williams.

Moreover, his opinions are irrelevant in any event. Whether Dr. Blais personally disagrees with the FDA or thinks the FDA is doing a poor job, the FDA's official position has been and is today that Mentor's MemoryGel breast implants are safe and effective. Dr. Blais cannot change that with his *ipse dixit*.

To the extent Dr. Blais is attempting to provide opinions on quality assurance and the manufacturing of Plaintiffs' or others' MemoryGel implants, there is no manufacturing defect claim in this case. *See* Doc. 71; Doc. 300 ("Because this is no longer a manufacturing defect case, and because the only remaining claim concerns whether Mentor concealed the true rupture rates of its implants, the lot histories are not relevant.").

The dozens of documents Dr. Blais was provided after producing his initial report and being deposed is also surprising. All of those documents were available to Plaintiffs and Dr. Blais before his initial report was produced. He could have—and should have—reviewed those materials and disclosed any purported regulatory opinions back in February. Plaintiffs have known since Mentor's motion to dismiss was decided that a central issue in the case was Mentor's compliance with FDA regulations (preemption) and reporting of ruptures. There was no reason to wait until now to disclose opinions relating to the FDA's regulation of Mentor.

Mentor is prejudiced by Plaintiffs' late disclosure of Dr. Blais's regulatory opinions. Mentor already deposed Dr. Blais on June 15, 2022. Requiring Mentor to depose him again on opinions that are not appropriate for rebuttal and in an area in which Dr. Blais is not an expert would impose additional burden and costs on Mentor and is prejudicial.

### D. Dr. Lawrence Mayer

Dr. Mayer is a biostatistician that Plaintiffs claim will rebut the opinions of Mentor's expert biostatistician, Dr. Robert Gibbons. There are two problems. First, Plaintiffs did not timely serve

a rebuttal expert report for Dr. Mayer on July 15, 2022 or July 18, 2022. Notably, Plaintiffs requested and received a six-week extension of time for their rebuttal expert reports from May 31, 2022 to July 15, 2022. Rather than the 30 days for rebuttal reports contemplated by the Court's scheduling order, the Rules and the case law, Dr. Mayer had more than *eleven weeks* to prepare his report and still did not provide it by the deadline. His report should be stricken for this reason alone.[4]

Dr. Mayer's report should also be stricken for the reason that it should have been included in Plaintiffs' initial expert reports. The issue of Mentor's reporting of ruptures is central to Plaintiffs' sole claim. It is the claim on which Plaintiffs have the burden of proof. That Plaintiffs initially provided no expert report on this topic should be fatal to her case. But whatever Dr. Mayer has to say on rupture reporting is certainly not rebuttal.

Mentor is prejudiced by Plaintiffs' untimely disclosure. Mentor is preparing its last three experts to be deposed August 3, 11 and 12 and then turning its attention to its motion for summary judgment and Rule 702 motions to exclude Plaintiffs' experts. Additional delay and cost due to Plaintiffs' dilatory tactics is unfair and prejudicial to Mentor. This case has already languished for five years.[5]

---

[4] Plaintiffs' counsel has stated that Dr. Mayer was confused as to the new deadline or had a medical condition for some part of the 11 weeks he had to work on his report. Neither of these render Plaintiffs' failure to timely serve his report justified or harmless. Indeed, that Dr. Mayer was confused as to the deadline or did not start on the report until when the report was due or fell ill in the last few weeks are really all issues for Plaintiffs' counsel who has the responsibility to keep their experts apprised of deadlines and ensure that reports are timely produced. There was never any mention of Dr. Mayer's medical issue until days after the deadline had been missed. That is not good cause for an extension or excusable neglect.

[5] Mentor anticipates that Plaintiffs will ask the Court for an extension of time, but given that the deadline passed over a week ago, and Plaintiffs did not move the Court for an extension before the deadline, Plaintiffs' request should be denied. "As with extensions of time under Rule 6(b), the proper method to seek extensions of discovery deadlines under Rule 16(b)(4) is to timely file a motion before the deadline passes." *McCann v. Cullinan*, No. 11 CV 50125, 2015 2105 WL

11

## IV. CONCLUSION

Mentor respectfully requests that the Court strike Plaintiffs' "rebuttal" expert reports of Dr. Tervaert, Dr. Blais and Dr. Mayer and preclude them from testifying in rebuttal in this matter.

---

4254226, at *20–21 (N.D. Ill. July 14, 2015). Additionally, Rule 16(b)(4)'s "good cause" requirement is a more demanding standard than Rule 6(b)(1)(B)'s "excusable neglect" requirement. *Id.* at *31 (collecting cases). Plaintiffs can have no good explanation for why they did not know that Dr. Mayer was not going to be able to meet the July 15, 2022 deadline and why they did not move for an extension before the deadline. Indeed, Plaintiffs' counsel asked Mentor's counsel for additional time under the morning of July 18, 2022 and never mentioned that Dr. Mayer needed additional weeks. Plaintiffs have not been diligent and any request for an extension should be denied. *See*, *e.g.*, *Experience Based Learning, Inc. v. Hanover Ins. Co.*, No. 17 CV 05133, 2019 WL 2576390, at *5 (N.D. Ill. June 24, 2019); *Garza v. Cervantes*, No. 14 C 923, 2015 WL 468748, at *3 (N.D. Ill. Feb. 3, 2015).

12

## **LOCAL RULE 37.2 CERTIFICATION**

Mentor's counsel met and conferred with Barbara Uberoi, counsel for Plaintiff, on July 20, 2022, in a good faith attempt to resolve this issue pursuant to Local Rule 37.2 and were unable to reach an accord on most issues.

Dated: July 23, 2022

NELSON MULLINS RILEY &
SCARBOROUGH LLP

*/s/ Dustin B. Rawlin*
Dustin B. Rawlin
dustin.rawlin@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1111 Superior Avenue, Suite 530
Cleveland, OH 44114
Telephone: (216) 220-1904
Facsimile: (216) 553-4275

TUCKER ELLIS LLP

Sherry Knutson
sherry.knustson@tuckerellis.com
233 South Wacker Drive, Suite 6950
Chicago, IL 60606-9997
Telephone: (312) 624-6300
Facsimile: (312) 624-6309

*Attorneys for Defendant Mentor Worldwide LLC*

## **CERTIFICATE OF SERVICE**

I, Dustin B. Rawlin, hereby certify that on July 23, 2022, a copy of the foregoing was served via email to:

Andy Dogali
adogali@dogalilaw.com

Barbara Uberoi
buberoi@dogali.com

Attorneys for Plaintiffs

DATED: July 23, 2022                  Nelson Mullins Riley & Scarborough LLP

                                                 By: */s/ Dustin B. Rawlin*
                                                        Dustin B. Rawlin

                                                    *Attorneys for Defendant Mentor Worldwide LLC*