UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE GRAVITT and TRAVIS GRAVITT, ) | |
| ) | |
| Plaintiffs, ) | 17 C 5428 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| MENTOR WORLDWIDE LLC, ) | |
| ) | |
| Defendants ) | |

### MEMORANDUM OPINION AND ORDER

Catherine and Travis Gravitt, a married couple, brought this suit against Mentor Worldwide, the manufacturer of a silicone breast implant called MemoryGel. Doc. 37. Catherine brings a claim under Illinois law for injuries allegedly resulting from Mentor's alleged failure to warn her about the dangers associated with the implants, while Travis brings a claim for loss of consortium. Before the court are Mentor's motion to strike Plaintiffs' three rebuttal expert reports, Doc. 318, and Plaintiffs' motion for an extension of the deadline to file one of those reports, Doc. 324. Mentor's motion is granted, and Plaintiffs' motion is denied.

### Background

The pertinent background is as follows. Under the court's scheduling order, the deadline for Plaintiffs to serve their initial Civil Rule 26(a)(2) disclosures was February 10, 2022. Doc. 306. Plaintiffs served reports from Arthur Brawer, M.D., Henry Dijkman, Ph.D., and Pierre Blais, Ph.D. Docs. 318-1, 318-2, 318-3. The deadline for Mentor to serve its Rule 26(a)(2) disclosures was April 30. Doc. 313. Mentor timely served reports from several experts, including Robert Gibbons, Ph.D., Joseph Rodricks, Ph.D., and David Williams, Ph.D. Docs. 321-15, 321-16, 321-17.

1

The scheduling order set a July 15 deadline for Plaintiffs to serve their rebuttal Rule 26(a)(2) disclosures. Doc. 317. On July 12, Plaintiffs' counsel e-mailed Mentor's counsel to request an extension to July 18 at 9:00 a.m. Doc. 318-4. Mentor's counsel agreed. *Ibid*. The morning of July 18, shortly after the extended deadline had passed, Plaintiffs' counsel e-mailed Mentor's counsel to request an additional two-week extension. Doc. 318-5. Mentor's counsel declined but gave Plaintiffs until the end of the day. Doc. 318-6. Later that day, Plaintiffs served a summary disclosure identifying Dr. Blais, Jan Willem Cohen Tervaert, M.D., Ph.D., and Lawrence Mayer, M.D., Ph.D., as rebuttal experts, but they served expert reports from only Drs. Blais and Tervaert. Doc. 318-7. Dr. Mayer did not complete his report until July 31, and Plaintiffs served it that day or shortly thereafter. Doc. 326-1 at 7; Doc. 325-9 at ¶ 16. On August 2, Plaintiffs moved the court for an extension to serve Dr. Mayer's report. Doc. 324.

**Discussion**

**I.    Dr. Lawrence Mayer**

In seeking an extension, Plaintiffs argue that their tardiness in serving Dr. Mayer's report should be excused because he experienced a "flare up" of a certain medical condition on June 1, causing him to become confused about the report's due date—specifically, although Plaintiffs' counsel told him on June 2 that the due date was July 15, Dr. Mayer avers that he mistakenly assumed from that conversation that it was July 31. Doc. 326-1 at 2, 6-7; Doc. 326-2 at ¶¶ 8-11. Civil Rule 6(b)(1)(A) provides that the court may extend a deadline for "good cause." Fed. R. Civ. P. 6(b)(1)(A). But because Plaintiffs did not move to extend the agreed-upon July 18 deadline until two weeks after it had passed, they must satisfy the heightened standard of Rule 6(b)(1)(B), which requires them to show both good cause and "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016) ("Rule

6 provides that when a request for extension of time is made after an expired deadline, 'the court may, for good cause, extend the time … if the party failed to act because of excusable neglect.'"); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 464 (7th Cir. 2005).

The question whether a party's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993) (interpreting a parallel provision of the Bankruptcy Rules); *see Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (applying *Pioneer*'s definition of "excusable neglect" to Civil Rule 6(b)(1)(B)); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). Relevant circumstances include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395; *see also Raymond*, 442 F.3d at 606. The "[m]ost important" factor is "the reason for the delay"; if the moving party fails to demonstrate "genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline," she cannot establish excusable neglect regardless of how short the delay was or how little it prejudiced the opposing party. *Satkar Hosp., Inc. v. Fox Television Holdings*, 767 F.3d 701, 707 (7th Cir. 2014).

Plaintiffs fail to demonstrate excusable neglect in two separate respects. First, the delay in serving Dr. Mayer's rebuttal report was inexcusable—Plaintiffs' counsel informed Dr. Mayer on June 2 of the then-applicable July 15 due date, and although counsel felt the need to "check on him" with a June 23 call given that he had not promptly responded to a mid-June email, she neglected to do what prudence demanded under the circumstances, which was to confirm with

3

him the July 15 deadline.  Doc. 325 at ¶¶ 4-5.  Second, although counsel learned on July 14 about Dr. Mayer's supposed confusion regarding the deadline—which by then had been extended to July 18—Plaintiffs did not seek an extension before the deadline passed.  *Id*. at ¶¶ 5-6; Doc. 326-1 at 6-7.  Instead, Plaintiffs inexplicably waited an additional two weeks to ask the court for an extension.  Doc. 324.  That two-week delay was inexcusable.  *See Flint*, 791 F.3d at 768 ("Neglect is generally not excusable when a party should have acted before the deadline."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012) (affirming the denial of a Rule 6(b)(1)(B) motion where the plaintiff's counsel, despite experiencing a medical emergency, could have moved for an extension before the deadline passed); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1111 (7th Cir. 1994) ("As the district court noted, counsel's family problems almost certainly would have been justification for an extension of filing deadlines, *if sought prospectively*.  None of counsel's proffered explanations, however, amounted to a special emergency that excused his failure to notify the court (and opposing counsel) of his predicament and to ask leave of the court for additional time in which to attend to his client's pending litigation.") (emphasis added).  Although the analysis could stop there, it bears mention that an extension would prejudice Mentor and materially impact the proceedings by requiring the court to push back the August 31 deadline to file dispositive and *Daubert* motions in this already protracted litigation.  Doc. 317.

Because Plaintiffs' delay in serving Dr. Mayer's report is inexcusable, their motion for an extension of time accordingly is denied, and Mentor's motion to strike Dr. Mayer's disclosure is granted.  *See Flint*, 791 F.3d at 768 ("[C]ase management depends on enforceable deadlines … .  In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines.") (citations and internal quotation marks omitted).  The same result obtains under

4

Civil Rules 16(b)(4) and 37(c)(1), which the parties also invoke in their briefs. Doc. 318 at 4, 11 n.5; Doc. 326-1 at 8; Doc. 332 at 8. Under Rule 16(b)(4), a court may modify a scheduling order for "good cause," where "the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *see Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (affirming the denial of a Rule 16(b)(4) motion where the movant could have sought an extension prior to the deadline but failed to do so). Under Rule 37(c)(1), "[t]he exclusion of non-disclosed evidence is automatic and mandatory … unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). As explained, Plaintiffs' delay was not harmless, nor were they justified in failing to serve Dr. Mayer's rebuttal report, or to seek relief from the deadline, before the deadline passed.

## II. Dr. Pierre Blais

Plaintiffs offer Dr. Blais's rebuttal report to rebut Kimberly Trautman's report regarding the U.S. Food & Drug Administration's ("FDA") regulation of and approval processes for medical devices. Doc. 318-9 at 4-5. Mentor contends that Dr. Blais, a chemist, is unqualified to offer opinions on that subject. Doc. 318 at 9. According to Mentor, Dr. Blais has no experience in regulatory compliance for the medical device industry, and any remotely relevant experience he had ended in 1989 when he left a job at the Bureau of Radiation and Medical Devices in Canada's Department of Health and Welfare. *Ibid*. Trautman, by contrast, is a recognized expert in medical device regulation who worked at the FDA for 24 years. *Ibid.*; Doc. 318-9 at 4.

Properly understood, Mentor's motion is one under Evidence Rule 702 to exclude Dr. Blais as unqualified to offer the opinions set forth in his rebuttal report. *See Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can

only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."). In opposing Mentor's motion, Plaintiffs note that Dr. Blais has "consulted on national and international standards founded on FDA procedures and regulations, premarket submissions, and was a liaison with the FDA and French authorities." Doc. 330 at 5-6. But Plaintiffs give no detail concerning Dr. Blais's experience with or knowledge of the FDA, and they fail to counter Mentor's contention that Dr. Blais is unqualified to offer the opinions in his rebuttal report. *Id*. at 12-13. Plaintiffs therefore have forfeited any argument that Dr. Blais is qualified to offer the opinions in his rebuttal report. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Forfeiture aside, based on the materials before the court, Dr. Blais is unqualified to offer the opinions set forth in his rebuttal report. His experience on matters that are, at best, tangential to the issues on which he seeks to testify—FDA regulation of medical devices—fails to establish that he has "superior knowledge, skill, experience, or education" as to those issues. *Carroll*, 896 F.2d at 212.

### III. Dr. Cohen Tervaert

Dr. Tervaert's rebuttal report offers a lengthy review of scientific literature that (he says) demonstrates the potential toxicity of silicone breast implants. Doc. 318-8 at 5-22. Dr. Tervaert notes that he interviewed Catherine about symptoms she experienced after receiving the implants, and he opines that her symptoms are consistent with silicone toxicity caused by the implants. *Id*. at 22-23. Mentor asks the court to strike Dr. Tervaert's rebuttal report on the ground that it is not proper rebuttal—in other words, that its opinions should have been disclosed

in an opening export report because they pertain to a key element of Plaintiffs' claims: whether Mentor's implants caused Catherine's injuries. Doc. 318 at 6-8.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (internal quotation marks omitted). A "plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996). Therefore, "[t]estimony offered only as additional support to an argument made in a case in chief"—or evidence for an argument that should have been made in the case in chief—"is improper on rebuttal." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). "Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Braun*, 84 F.3d at 237.

Under these principles, Mentor is correct that Dr. Tervaert's rebuttal report is improper rebuttal. The report builds the case for silicone toxicity in general and the causation element of Catherine's claim in particular. Because those matters go directly to whether Mentor's implants caused Catherine's injuries, they belonged in the opening expert reports. *See Africano v. Atrium Med. Corp.*, 2019 WL 5085338, at *4 (N.D. Ill. Oct. 10, 2019) (striking a rebuttal expert report that addressed only the opposing expert's "broad conclusion" that the defendant's product was safe); *Noffsinger v. The Valspar Corp.*, 2011 WL 9795, at *6 (N.D. Ill. Jan. 3, 2011) (striking portions of a rebuttal report in which an expert explained his examination of the plaintiff and opined that his symptoms were caused by exposure to the defendant's product). Indeed, Plaintiffs' opening experts *did* make the case for a causal link between Mentor's implants and

7

Catherine's injuries: Dr. Brawer examined Catherine and opined that her injuries were caused by the implants, Doc. 318-1, while Dr. Dijkman reviewed literature supporting the toxicity of silicone implants and opined that Catherine's symptoms were consistent with such toxicity, Doc. 318-2. Thus, Plaintiffs themselves recognize that the opinions offered in Dr. Tervaert's rebuttal report were properly grist for an opening expert report.

Resisting this conclusion, Plaintiffs submit that Dr. Tervaert purports to rebut points made by Mentor's experts. Doc. 330 at 7-12. True enough, Dr. Tervaert's rebuttal report occasionally references the reports prepared by Drs. Williams, Rodricks, and Gibbons. Specifically, the rebuttal report mentions that Drs. Williams and Rodricks opined that no medical literature or peer-reviewed data, respectively, support a link between silicone implants and symptoms like Catherine's, Doc. 318-8 at 5; observes that Dr. Williams suggested that a patient's genetics and prior exposure to viruses, not silicone materials, drive such symptoms, *id*. at 11-12; and notes that Dr. Gibbons's report criticized the methodology of pharmacovigilance studies finding a link between implants and such symptoms, *id.* at 17.

That Dr. Tervaert's report makes a few references to Mentor's experts does not make it proper rebuttal. After mentioning Drs. Williams's and Rodricks's views on the lack of scientific evidence supporting a link between silicone implants and certain medical symptoms, Dr. Tervaert reviewed studies that he says supports such a link. Doc. 318-8 at 5-11. But Dr. Dijkman's opening report had already reviewed literature supporting silicone toxicity, Doc. 318-2 at 1-3, 8-10, and Dr. Williams responded by critiquing those studies, Doc. 321-17 at 17-19. At best, then, Dr. Tervaert's discussion of the literature rehashes Dr. Dijkman's analysis; at worst, it sandbags Mentor with new citations to which its experts have no opportunity to respond.

8

Dr. Tervaert also fails to properly rebut Dr. Williams's opinion about the role played by genetics and prior exposure to viruses or Dr. Gibbons' criticism of certain pharmacovigilance studies. Dr. Tervaert does not, for example, explain how those experts are mistaken in their understanding or application of any particular piece of evidence. He instead responds with more analysis making the case for silicone toxicity in general. Doc. 318-8 at 11-22. Again, that evidence belonged in the Plaintiffs' opening expert reports, not in a rebuttal report.

## Conclusion

Mentor's motion to strike Plaintiffs' rebuttal expert reports is granted, and Plaintiffs' motion for an extension of the deadline to serve Dr. Mayer's rebuttal report is denied.

August 22, 2022

_____
United States District Judge